IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TONYA NIXON, individually and on )
behalf of a class of those )
similarly situated, )
)
              Plaintiff, )
)
         v. )      1:07CV839
)
ALAN VESTER AUTO GROUP, INC., )
*et al.*, )
)
             Defendants. )

**MEMORANDUM OPINION AND RECOMMENDATION OF MAGISTRATE JUDGE ELIASON**

    This case comes before the Court on two related matters: Defendants' motion to dismiss Plaintiff's first amended complaint and Plaintiff's motion to amend that complaint a second time to add an additional plaintiff and modify certain claims. Because the issues involved in these motions overlap considerably, the Court discusses them together here.

    In the existing complaint, Plaintiff alleges a variety of claims arising from her purchase of a used vehicle at a dealership bearing the name of Alan Vester. Alan Vester is the president of numerous dealerships meeting this description, and the complaint does not specify from which of these dealerships Plaintiff made her purchase. It only specifies that Alton Evans manages the dealership in question.[1] However, all of the Vester dealerships

---

[1] Plaintiff's affidavit, attached to the complaint, makes clear that the dealership at issue is, in fact, Defendant Alan Vester Auto Group, Inc. d/b/a Alan Vester Auto Sales of Burlington ("AVAG-Burlington").

are named defendants in the present lawsuit, as are Signature Auto Finance, Inc., Universal Underwriters Insurance Company ("Universal"), Western Surety Company ("Western"), and Alan Vester in his individual capacity.

At the time of Plaintiff's purchase in 2004, her sole source of income was her Social Security disability check. Plaintiff alleges that, in order to secure financing for the car, an employee of the Vester dealership forged[2] official Social Security documents to fraudulently represent to lenders that Plaintiff received $2186 per month in Social Security income, which was more than she actually received. Plaintiff never obtained a copy of this document from Vester, and she did not realize that the forgery existed until 2006, when a representative of her lender contacted her by phone. While Plaintiff still owns the car in question and makes payments, she contends that she can ill afford the payments based on her actual income.

Based on the above facts, Plaintiff brings the following claims: (1) violation of the North Carolina Motor Vehicle Dealers and Manufacturers Licensing Law ("Dealers Act"), N.C.G.S. § 20-285, et seq.; (2) unfair and deceptive trade practices ("UDTPA") under N.C.G.S. § 75-1.1, et seq., and N.C.G.S. § 25A-43, et seq.; (3) common law fraud; (4) violation of the Credit Repair Organization Act, 15 U.S.C. § 1679, et seq. ("CROA"); (5) violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691, et seq. ("ECOA"); (6)

---

[2]Throughout the complaint, Plaintiff alleges Defendants forged documents without stating how this was done.

unjust enrichment, rescission, and restitution; (7) individual liability of Alan Vester based on the theories of alter ego and piercing the corporate veil; (8) wrongful acts committed pursuant to a conspiracy; (9) punitive damages; (10) the liability of Universal and Western under CROA because they are sureties for the Vester dealerships; (11) Alan Vester being liable under counts two, three, seven, eight, and nine because he owns and dominates the dealerships, and (12) Signature Auto Finance because it would buy loans rejected by lenders.

The proposed second amended complaint purports to add more explicit fraud allegations and makes other minor changes to the existing complaint. It also seeks to add Ruth Hodges ("Hodges") as an additional plaintiff. Hodges, like Plaintiff, received Social Security disability payments as her only source of income. In 2005, she agreed to help buy a car for her daughter-in-law from a Vester dealership in Roanoke Rapids, North Carolina. When Hodges co-signed for the car, an employee of the dealership "told her that if the bank called, she needed to say she paid $500 down. In fact she does not recall paying $500 down." (Docket No. 8 ¶ 38.) The salesman later informed Hodges that her income was not enough to buy the car, but he told her that "he was going to say she had more income, and if the bank called, she needed to say that." (Id. ¶ 40.) Although Hodges allegedly refused to go along with this scheme, the dealership fraudulently represented that she made $2423 per month by forging two Social Security documents, which was more than her actual income. When the lender discovered the fraud, it

-3-

required "Vester to repurchase the loan." Sometime later, Hodges' son and daughter-in-law were unable to continue making payments on the car, and Hodges instructed the bank to repossess it. Based on these allegations, the proposed complaint asserts the same claims on behalf of Hodges as those set out above as to Plaintiff.

Defendants oppose Plaintiff's motion to amend pursuant to Fed. R. Civ. P. 15 on three grounds: (1) futility of the amendment, (2) failure to show good cause, and (3) repeated failure to correct deficiencies in the prior complaint. Defendants base their futility argument on the contentions set forth in their motion to dismiss. They contend that all of Plaintiff's allegations are deficient under Fed. R. Civ. P. 12(b)(6), such that minor changes, additions, and the insertion of an additional plaintiff would do nothing to resuscitate them. For this reason, the Court's discussion of Defendants' motion precedes that of Plaintiff's.

## Discussion

### Motion to Dismiss

Defendants have filed a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. The standard for such review was recently set out in Giarratano v. Johnson, 521 F.3d 298, 302 & 304 (4th Cir. 2008), where the court stated:

> [W]e "take the facts in the light most favorable to the plaintiff," but "we need not accept the legal conclusions drawn from the facts," and "we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir.2000); see also Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765

-4-

(4th Cir.2003). Additionally, the complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, ____ U.S. ____, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007) (emphasis added).

. . .

The conclusion that dismissal is appropriate comports with Twombly, ____ U.S. ____, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), [when the pleadings do not disclose] "enough facts to state a claim to relief that is plausible on its face." Id. at 1974. In Twombly, the Supreme Court, noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," id. at 1964-65, upheld the dismissal of a complaint where the plaintiffs did not "nudge [ ] their claims across the line from conceivable to plausible." Id. at 1974.

Here, Defendant presents six arguments in favor of dismissing Plaintiff's claims. They are as follows: (1) because Plaintiff dealt with only one Vester dealership, she lacks standing to state a cause of action against the other Defendant dealerships and Signature Auto Finance; (2) Plaintiff fails to properly allege fraud pursuant to Fed. R. Civ. P. 9; (3) Plaintiff fails to properly comply with Rule 9 in alleging her Dealers Act claim; (4) Plaintiff's damages are speculative as to the fraud and UDTPA claims; (5) the Vester dealerships are not subject to the CROA; and (6) Plaintiff will not adequately represent the proposed class.

### *Standing*

Defendants claim that the other dealerships have been improperly made Defendants[3] because "plaintiff may not sue a party

---

[3]The dealership Defendants are as follows: Alan Vester Motor Company, Inc., Alan Vester Nissan, Inc., Alan Vester Auto Mart, Inc., Alan Vester Ford Lincoln
(continued...)

-5-

who has not damaged him." (Docket No. 28 at 7.) They point out that Plaintiff's dealings were exclusively with AVAG-Burlington. This defense is essentially one premised on lack of standing.

A court is required to make an inquiry into standing <u>sua sponte</u>, if necessary. <u>Stephens v. County of Albemarle, VA</u>, 524 F.3d 485, 490 (4th Cir. 2008). To establish standing, a plaintiff "must demonstrate that it has suffered a concrete and particularized injury that is either actual or imminent, that the injury is fairly traceable to the defendant, and that it is likely that a favorable decision will redress that injury." <u>Massachusetts v. E.P.A.</u>, 549 U.S. 497 (2007)(citing <u>Luhan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-561 (1992)). In other words, a plaintiff may not sue a party who has not damaged her. <u>Stephens</u>, 524 F.3d at 493.

In the present case, Plaintiff argues that her damages arose from the concerted actions of Defendants in the following manner:

> She alleges that the dealership chain implemented and engaged in a pattern and practice of forging and falsifying customer credit related information across all its stores. She specifically alleges numerous examples of how this scheme occurred across the dealerships. She alleges Mr. Alan Vester was personally aware of the practice because of complaints by lenders, yet controlled the corporate entities such that they continued the fraudulent practices. She alleges that Vester even formed its own lending company, Signature Auto Finance, to take over fraudulent deals rejected by the outside lenders.

---

[3](...continued)
Mercury, Inc., and Alan Vester Auto Mart of Kinston, Inc. Plaintiff has failed to show the connection between Defendants Alan Vester Management Corporation and Alan Vester Enterprises, LLC, as well.

-6-

> These allegations, thoroughly documented by exhibits to
> the complaint, suffice to plead a case of conspiracy and
> concerted action across all the Vester stores and
> directed from the top-down by Mr. Vester. Therefore the
> Plaintiffs [sic] have standing against all the defendants
> for joint and several liability as it was their
> conspiring together that caused the harm.

(Docket No. 37 at 5-6.)

Plaintiff's contention that a civil conspiracy existed between AVAG-Burlington and the other dealerships in the present case is conclusory and even belied by some of her own arguments. First, courts have long held that a parent company, in certain instances, may perhaps be held liable for the actions of its subsidiaries. See, e.g., Keffer v. H.K. Porter Co., Inc., 872 F.2d 60 (4th Cir. 1989). However, this Court finds no case - and Plaintiff cites none - where a subsidiary has been held liable for the actions of another subsidiary, i.e., another business at the same level of the corporate structure. Plaintiff attempts to evade this problem by making conclusory allegations of conspiracy. The elements of such a claim are: "(1) an agreement between two or more persons; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) which agreement results in injury to the plaintiff." (Docket No. 37 at 6)(quoting Tomi W. Bryan, J.D., 5 Strong's North Carolina Index 4th Conspiracy § 1). However, Plaintiff actually asserts that Alan Vester directed the alleged conspiracy "from the top-down," and "controlled the corporate entities such that they continued the fraudulent practices." Thus, as alleged, it was not an agreement between the dealerships, but rather directives dictated to them by the owner or management, above the individual dealerships, which

-7-

led to the fraudulent actions in the instant case. Based on these assertions, Plaintiff fails to allege a civil conspiracy under North Carolina law, and, as a result, her injuries, if any, are not "fairly traceable" to the other dealerships. Moreover, aside from her bare allegations of "conspiracy," Plaintiff fails to show that any dealership, other than AVAG-Burlington, took any action at all in regard to her purchase of the automobile. There is nothing to suggest that any of the Vester dealerships, other than AVAG-Burlington, caused Plaintiff's injuries in a way which would convey standing. Therefore, all claims against these Defendants should be dismissed. For the same reasons, Plaintiff's claims against Signature Auto Finance, a lending company with whom Plaintiff had no dealings and who took no action in regard to Plaintiff, also merit dismissal.

### *Fraud, Dealers Act, and UDTPA Claims*

Defendants next contend that Plaintiff fails to sufficiently allege fraud against her as necessary to support her common law fraud, Dealers Act, and UDTPA claims.[4] Assertions of fraud face a stiffer hurdle than most other claims in that they must comply with the heightened pleading standard of Fed. R. Civ. P. Rule 9(b).

---

[4] Defendants' motion is poorly constructed, and does not, in a heading, clearly seek to dismiss all three claims. Yet, all three claims are premised on the allegations of fraud and deception, which Defendants claim are insufficient to state a claim for relief. It is also clear Defendants seek dismissal of all three claims in the portion of the brief where Defendants assert Plaintiff's damages are speculative. There, Defendants argue that the only harm alleged is that Plaintiff purchased a car she could not afford, (see Docket No. 28 at 13), and that such an allegation will not support a claim for common law fraud or one under the UDTPA. Therefore, although inartfully constructed, it is clear that Defendants seek dismissal of all three claims on the same basis.

Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Thus, a Plaintiff asserting fraud must identify, among other things, both the statements alleged to have been misleading or fraudulent and the reasons such statements were misleading. These reasons must go beyond a formulaic set of allegations; a plaintiff must allege sufficient facts to support a reasonable belief that the defendant's statements were, in fact, misleading. Teachers' Ret. Sys. v. Hunter, 477 F.3d 162, 174-5 (4th Cir. 2007). "The primary purpose of Rule 9(b) is to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based." Ross v. Bolton, 904 F.2d 819, 823 (2d Cir. 1990).

Here, Defendants contend that the complaint fails to sufficiently identify the person who allegedly created the fraudulent documents or the person who sent those documents to Plaintiff's lender. In addition, Defendants claim that Plaintiff does not allege reasonable reliance on the alleged fraudulent misrepresentations. Plaintiff counters that her complaint complies with Rule 9 by attributing the misrepresentation of her Social Security income to "one or more Vester salesmen acting in the course and scope of their employment including Alton Evans." (Docket No. 37 at 10.) She also contends that it is unnecessary for a plaintiff to plead reliance where she has already alleged the defendant's failure to disclose a material fact. Citing Everts v. Parkinson, 147 N.C. App. 315, 325-26, 555 S.E.2d 667, 674 (2001).

-9-

A review of the complaint, taken in the light most favorable to Plaintiff, reveals that the allegations of fraud adequately notify Defendants of the basis for the claims against them. The complaint clearly alleges that one or more employees of AVAG-Burlington falsified Plaintiff's Social Security information and submitted it to lenders with the goal of obtaining financing for Plaintiff. The Court finds no cases suggesting, as Defendants seem to argue, that only actual names are sufficient to identify the person or persons making the fraudulent misrepresentations at this stage of the proceedings, and Defendants cite none. Consequently, this contention does not support dismissal of Plaintiff's fraud claim.

Unfortunately for Plaintiff, Defendants' reliance argument is far more persuasive. The complaint fails to set out facts showing Plaintiff relied on the misrepresentation in purchasing the automobile. The only alleged misrepresentation – the overstatement of Plaintiff's Social Security income – was made to a third party lender, who then agreed to finance Plaintiff's car. Thus, only the lender, not Plaintiff, could have reasonably relied on Defendants' assertions under the reasoning set forth in <u>Everts</u>. Plaintiff does not even allege that, absent this fraudulently-induced financing, she would not have purchased a car from the Defendant dealership and explain why. She fails to show reliance, as is necessary to support her fraud claim.

Plaintiff attempts to counter this reasoning by citing the <u>Everts</u> decision for the proposition that "reliance is a redundant

-10-

and unnecessary element in the context of a claim of fraud based on a failure to disclose a material fact," 147 N.C. App. at 326. Yet, that case raises as many problems for Plaintiff as it solves. When pleading a case based on fraudulent concealment in North Carolina,

> plaintiff must allege the following essential elements: (1) a false representation or concealment of a material fact, (2) that was reasonably calculated to deceive, (3) which was made with the intent to deceive, (4) that did in fact deceive, and (5) resulted in damage. Liner v. DiCresce, 905 F. Supp. 280, 288 (M.D.N.C. 1994)(citing Myers & Chapman, Inc. v. Thomas G. Evans, Inc., 323 N.C. 559, 374 S.E.2d 385 (1988)). And, because this is a case of fraudulent concealment or nondisclosure, plaintiff must additionally allege that all or some of the defendants had a duty to disclose material information to him as silence is fraudulent only when there is a duty to speak. Griffin v. Wheeler-Leonard & Co., 290 N.C. 185, 198, 225 S.E.2d 557, 565 (1976). Marlen C. Robb & Son Boatyard & Marina, Inc. v. Vessel Bristol, 893 F. Supp. 526, 542 (E.D.N.C. 1994); see also Brickell v. Collins, 44 N.C. App. 707, 710, 262 S.E.2d 387, 389, review denied, 300 N.C. 194, 269 S.E.2d 622 (1980).

Breeden v. Richmond Community College, 171 F.R.D. 189, 194 (M.D.N.C. 1997).

Furthermore, to comply with the requirement of Fed. R. Civ. P. 9(b) when pleading fraud by omission,

> a plaintiff usually will be required to allege the following with reasonable particularity: (1) the relationship or situation giving rise to the duty to speak, (2) the event or events triggering the duty to speak, and/or the general time period over which the relationship arose and the fraudulent conduct occurred, (3) the general content of the information that was withheld and the reason for its materiality, (4) the identity of those under a duty who failed to make such disclosures, (5) what those defendant(s) gained by withholding information, (6) why plaintiff's reliance on the omission was both reasonable and detrimental, and (7) the damages proximately flowing from such reliance. See, e.g., Chrysler Credit Corp. v. Whitney Nat'l Bank, 824 F. Supp. 587, 598 (E.D. La.1993); Frank M. McDermott, Ltd. v. Moretz, 898 F.2d 418, 421 (4th Cir. 1990)(citation

-11-

> omitted); see also Learning Works, Inc. v. The Learning Annex, Inc., 830 F.2d 541, 546 (4th Cir. 1987)(stating that a plaintiff must plead with particularity reasonable, detrimental reliance upon a misrepresentation).

Id. at 195-196.

Plaintiff fails to establish through allegations any legal duty to communicate the fact that falsified information was submitted to lenders. In her brief, she merely asserts it as a bald allegation, without establishing a basis for some relationship of trust imposed by law. Id. at 196. Next, she fails to show the materiality of the information with respect to her purchase of the automobile. She clearly knew her own actual income and could determine whether she could afford to purchase it and make payments. The party which was misled was the lender, not Plaintiff. She fails to allege any reasonable basis for detrimental reliance or damages as a result of Defendants not informing her of their misrepresentation of her income. Plaintiff appears to believe that the lender's approval of the loan somehow establishes her ability to pay for the car. What she fails to explain is why she chose to enter into a loan she could not afford. She was certainly in the best position to know the state of her own finances, and she does not allege that Defendants concealed the amount of her loan or monthly payments at the time of her purchase. In short, Plaintiff is attempting to foist her own responsibility for making an unwise decision on a third party. This cannot be the

-12-

basis for liability in a rational system of law.[5]  Consequently, even accepting all allegations in the complaint as true, Plaintiff fails to show why Defendants should bear total responsibility for her own self-imposed recent financial hardships.

Turning next to Plaintiff's state law Dealers Act claim, Plaintiff argues that, as a "creature of statute," this claim is not subject to Rule 9's particularity requirement for pleading fraud.  The Dealers Act provides a cause of action for violations of Article 12 or 15 of Chapter 20 (N.C.G.S. § 20-288(e)) where a customer suffers loss or damage as a result of those violations. Perkins v. Helms, 133 N.C. App. 620, 624, 515 S.E.2d 906, 908 (1999).  She contends that, because the Dealers Act encompasses unfair competition and unfair or deceptive trade practices as well as common law fraud, Dealers Act claims in general should not be held to Rule 9's heightened standard.[6]  However, even accepting this contention as true, a plaintiff must still show some type of misrepresentation to proceed with a claim (see n. 6, supra) for unfair or deceptive trade practices or unfair competition.  See

---

[5]For example, the thread of logic which purportedly would hold Defendants responsible for obtaining a loan for plaintiff which she would not have been offered if her income was stated correctly, would also serve as grounds for holding the lender liable should it make a loan that ultimately turned out to be one Plaintiff could not "afford."

[6]Whatever types of actions are permitted under the Dealers Act, Plaintiff's allegations charge Defendants with fraud and deception by using false documents to obtain loans.  The gravamen of the claim remains the same as in the fraud claims.  That is, Plaintiff claims that Defendants submitted false information which caused lenders to approve a loan to Plaintiff, which enabled her to purchase a car.  But, as before, it was the lenders who were defrauded.  It should be noted that for relief, Plaintiff only seeks punitive damages.

-13-

Business Cabling, Inc. v. Yokeley, 182 N.C. App. 657, 666, 643 S.E.2d 63, 69 (2007)(to recover under the UDTPA, a plaintiff must show that he or she "detrimentally relied upon a statement or misrepresentation and he or she suffered actual injury as a proximate result of defendant's deceptive statement or misrepresentation"); see also Harrington Mfg. Co., Inc. v. Powell Mfg. Co., Inc., 38 N.C. App. 393, 404, 248 S.E.2d 739, 746 (1978)("unfair competition . . . applies to misappropriation as well as misrepresentation"). Thus, the issue of justifiable reliance remains. In short, Plaintiff's Dealers Act claim, like her claim for common law fraud, should therefore be dismissed for the same deficiency.

The same is true for her additional claim for unfair and deceptive trade practices under N.C.G.S. § 75-1.1, set out as count two of her complaint. It should also be dismissed.[7] Also, because the CROA claim may be dismissed, the related claim in count ten against the Dealers Act (N.C.G.S. § 20-288(e)) sureties Universal and Western may be dismissed as well.

---

[7] In their fourth argument, Defendants contend that Plaintiff has not adequately pled damages. They point out that Plaintiff's only alleged harm is her "hardship" in making vehicle payments, and that such damages are, at best, speculative. As such, Defendants seek dismissal of all claims requesting actual damages, including those for fraud and unfair and deceptive trade practices. (See Docket No. 28 at 13.) As it turns out, Plaintiff only seeks actual damages in her fraud and UDTPA claims. (In her Dealers Act claim, she only seeks punitive damages.) To recover actual damages, Plaintiff must identify the damage or loss and show they are the natural and probable result of the tortfeasor's conduct, and be based on a standard which will allow calculation of the amount. Leftwich v. Gaines, 134 N.C. App. 502, 511, 521 S.E.2d 717, 724 (1999). Nothing in the complaint appears to provide this information for the fraud or UDTPA claim. As for her Dealers Act claim, Plaintiff fails to show that the Act allows for punitive damages in the absence of actual damages.

## *CROA and Count Ten*

Defendants next contend that the CROA does not apply to any of the Defendant Vester dealerships. They argue that a car dealership is not a "credit repair organization[]" under the terms of the statute, nor is it associated with such an organization or its purposes in a manner which would create liability under the that statute. Plaintiff, in turn, espouses a broader interpretation of the CROA, arguing that the term "person," as used in the statute, "covers car dealers who insert false and fraudulent consumer-related information into financing applications sent to lenders."[8] (Docket No. 37 at 16.)

In pertinent part, it is a violation of the CROA for any "person" to:

> (1) make any statement, or counsel or advise any consumer to make any statement, which is untrue or misleading (or which, upon the exercise of reasonable care, should be known by the credit repair organization, officer, employee, agent, or other person to be untrue or misleading) with respect to any consumer's credit worthiness, credit standing, or credit capacity to-
>
>   (A) any consumer reporting agency . . . ; or
>
>   (B) any person-
>
>     (i) who has extended credit to the consumer; or
>
>     (ii) to whom the consumer has applied or is applying for an extension of credit.

15 U.S.C. § 1679b(a).

---

[8]The Fourth Circuit has yet to issue an opinion relating to the scope of the CROA.

Plaintiff contends the use of the term "person" encompasses more than just credit repair organizations and includes car dealerships. Plaintiff relies on a series of decisions from the Northern District of Illinois.[9] That court admits that its construction makes every person in the United States potentially liable when making any statement concerning consumer credit. <u>Lacey v. William Chrysler Plymouth Inc.</u>, No. 02 C 7113, 2004 WL 415972 (N.D. Ill. Feb. 23, 2004). It thought this construction necessary because § 1679a expressly covers only credit repair organizations, while § 1679b uses the word persons. However, the language of the statute speaks to actions in conjunction with using the services of a credit repair organization. That would appear to be the intent of Congress and the better reading of the statute. Thus, courts have held that "[t]he plain language of the statute dictates that the CROA applies to a person's indirect fraudulent actions *taken in connection with the offer of credit repair services*." <u>Stith v. Thorne</u>, No. 3:06-CV-00240-D, 2006 WL 5444366, at *10 (E.D.Va. Oct. 30, 2006)(emphasis added); <u>see also</u> <u>Wojcik v. Courtesy Auto Sales, Inc.</u>, No. 8:01CV506, 2002 WL 31663298, at *8 (D. Neb. Nov. 25, 2002). Where no credit repair services are in issue, the statute simply does not apply. The rationale for this distinction has been aptly stated as follows:

> Congress' focus in enacting the CROA was on the credit repair industry, and specifically for regulation of credit repair organizations. Although this section uses the word "person," it is clear that it was not Congress'

---

[9]<u>See</u> Cases cited in Plaintiff's Brief. (Docket No. 37 at 16.)
-16-

>  intent to have the CROA apply to all persons, whether they are associated with credit repair or not. Thus, only a credit repair organization or a "person" associated with a credit repair organization can violate the CROA.

Henry v. Westchester Foreign Autos, Inc., 522 F. Supp. 2d 610, 613 (S.D.N.Y. 2007).

In the present case, Plaintiff does not allege that any of the Defendants were credit repair organizations or held themselves out as offering any form of credit repair services. Absent such allegations, Plaintiff's claim under the CROA should be dismissed.

### *Class Action Issues*

Defendants' final argument relates to this action's potential class certification under Fed. R. Civ. P. 23. Plaintiff correctly notes that, because there is no pending motion for class certification at this point in the proceedings, Defendants' argument is premature. Thus, this contention cannot serve as a basis for dismissal at the present time.

### *Plaintiff's Remaining Claims*

Defendants' motion to dismiss does not cover all claims alleged in Plaintiff's first amended complaint. It does not explicitly address counts five through twelve, which claims are: (5) the Equal Credit Opportunity Act, (6) unjust enrichment, (7) alter ego and piercing the corporate veil, (8) conspiracy, (9) punitive damages, (10) liability of the Dealers Act sureties Universal and Western, (11) liability of Alan Vester, and (12) liability of Signature Auto Finance. However, the above discussion reveals that no causes of action exist as to the sureties and

-17-

Signature and, therefore, counts ten and twelve should be dismissed, as well as counts one through four, and the dealership Defendants.

## Motion to Amend

Plaintiff's motion to file a second amended complaint should be denied in light of the above discussion. This complaint seeks to add another plaintiff who purchased a car from another Vestal dealership. Not only was this purchase totally unrelated to the original complaint, but moreover, Ms. Hodges actually knew about the scheme and went along with it. She knew her income was insufficient for the loan, yet did nothing to investigate or stop the transaction. The car was purchased for the use of her daughter-in-law and when the son could not keep up payments, Ms. Hodges told the bank to take back the car. Thus, her case is significantly weaker than Plaintiff's.

Except as to the ECOA claim, which is the remaining substantive claim of possible merit, amendment would be futile given the dismissal of Plaintiff's underlying major claims. More importantly, Plaintiff and proposed plaintiff Hodges only share one common Defendant, Alan Vester. Moreover, based on the discussion of standing, Plaintiff could only potentially serve as a member of a class of those persons who purchased automobiles from AVAG-Burlington. Hodges, however, purchased her vehicle from Alan Vester Ford Lincoln Mercury in Roanoke Rapids. Consequently, Plaintiff fails to show good cause that the two actions should be combined.

-18-

**IT IS THEREFORE RECOMMENDED** that Defendants' motion to dismiss (docket no. 27) be granted as to counts one, two, three, four, ten, and twelve of Plaintiff's first amended complaint, and denied as to counts five, six, seven, eight, nine, and eleven.

**IT IS FURTHER RECOMMENDED** that Plaintiff's motion to amend and add a party (docket no. 7) be denied.

*/s/ Russell A. Eliason*
**United States Magistrate Judge**

October 8, 2008